**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| BRANDON BETZ<br><br>Plaintiff,<br><br>vs.<br><br>FAIRFAX COUNTY SCHOOL BOARD, *et al.*<br><br>Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Case No. 1:25-cv-2314 |

# FIRST AMENDED COMPLAINT

## PARTIES, JURISDICTION, AND VENUE

1. Defendant Fairfax County School Board ("FCSB" or "the Board") is the body corporate responsible for the supervision and operation of the school division commonly known as Fairfax County Public Schools ("FCPS"). All references herein to FCPS refer to the school system governed and controlled by FCSB.

2. Defendant Bryan Hill is an adult individual and citizen of the Commonwealth of Virginia. At all relevant times, Hill was employed by FCPS as a teacher and head varsity basketball coach at John R. Lewis High School (the "School"), which is part of FCPS.

3. Plaintiff Brandon Betz is an adult individual and citizen of the Commonwealth of Virginia. At all relevant times, Betz was employed by FCPS as an instructional assistant at John R. Lewis High School.

4. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

5. This Court has supplemental jurisdiction over the related state-law claim under 28 U.S.C. § 1367 because it forms part of the same case or controversy.

6. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these claims occurred in Fairfax County, Virginia.

## FACTUAL ALLEGATIONS

### *Plaintiff's Disability and Employment*

7. Betz has worked as an instructional assistant at John R. Lewis High School (the "School") since approximately 2020 and was qualified to perform the essential functions of his position. He was also the freshman basketball team's coach from 2021-2024.

8. Betz has a permanent physical disability that substantially limits his walking and mobility, and requires him to use two canes to walk.

9. Betz's disability and use of two canes were open and obvious to Defendants.

### *FCSB's Employment and Rehiring of Hill*

10. Upon information and belief, FCSB previously employed Hill at Mount Vernon High School in the early 2000s, and that employment ended following misconduct involving inappropriate or harassing communications to coworkers.

11. Upon information and belief, Hill subsequently worked for other public-school systems in the Washington, D.C. metropolitan area and separated from those systems following additional disciplinary concerns.

12. In Spring 2024, Hill was recruited to the School by then-Principal Alfonso Smith, who had previously coached with Hill. When FCSB rehired Hill, it possessed or had access to its own records concerning Hill's prior FCPS employment.

13. FCSB thereafter rehired Hill and assigned him to the School as a teacher and head varsity basketball coach.

*FCSB's Delegation of Supervisory and Economic Authority to Hill*

14. As head basketball coach, Hill managed the School's basketball program and supervised the subordinate coaches serving on his staff.

15. Upon information and belief, FCSB allocated funds to Hill for the compensation of subordinate coaches within the basketball program.

16. Upon information and belief, FCSB delegated to Hill authority to select and remove subordinate coaches, assign them among varsity and junior-varsity teams, determine their coaching duties and schedules, and decide which subordinate coaches would receive stipends and the amounts they would receive from the allocated funds.

17. Betz understood Hill's staffing, assignment, and compensation decisions to be final in practice because Hill announced and implemented those decisions without consulting a higher-level administrator, seeking further approval, or suggesting that another official would independently review their merits. Upon information and belief, FCSB implemented Hill's decisions, thereby empowering Hill to cause significant changes in the responsibilities and economic benefits of subordinate coaches.

18. During the summer of 2024, Hill promised Betz a paid position as an assistant varsity coach, with a stipend of approximately $3,000. When the school year began, Hill reversed course and assigned Betz to coach the junior-varsity team, which carried a lower stipend of approximately $2,000.

19. In or around November 2024, Hill exercised the authority FCSB had delegated to him over the compensation of subordinate coaches by removing $1,000 from Betz's stipend and allocating those funds to another coach to cover study hall.

20. When Betz questioned Hill about the withheld compensation, Hill told Betz that Hill would restore the $1,000 using funds generated by a basketball camp the following summer. Hill thereby represented that he retained authority to determine whether and when Betz would receive the withheld compensation.

21. Betz subsequently ceased actively performing coaching duties. His compensation for services already performed, however, remained unresolved. As of December 20, 2024, the withheld $1,000 remained unpaid, and Hill continued to represent that its future payment was within his control.

22. After Betz ceased actively performing coaching duties, Hill told students that Betz had stopped coaching because he was greedy and upset about his compensation.

*The December 20, 2024 Disability-Directed Assault*

23. On December 20, 2024, Betz and Hill were working at the School; during a class change, Betz asked Hill to correct the statements Hill had made to students and to explain that Betz had stepped away from coaching because of family obligations.

24. During that exchange, Hill defended his exercise of authority over Betz's compensation. Hill stated that he had taken $1,000 from Betz's compensation because Betz had not covered study hall and had allocated the money to another coach.

25. Hill also invoked his position as head coach, asserted that he could "do whatever he wants to do," challenged Betz's authority to interact with basketball players, and ordered Betz to return to his classroom.

26. After the discussion concerning coaching and compensation reached its conclusion, Betz turned his back to Hill and began walking into his adjoining classroom as confirmed by the School's surveillance video.

27. As Betz was entering his classroom, Hill called him back and initiated a new and separate confrontation.

28. Instead of discussing Betz's coaching duties or compensation, Hill called Betz a "bitch ass nigga."

29. Hill then directly invoked and taunted Betz's disability, stating in substance: "What are you going to do about it? You're handicapped."

30. Betz turned and verbally objected, but posed no credible physical threat as his hands remained occupied by the two canes he required to stand and walk.

31. Hill, an able-bodied athletic coach, then delivered a forceful two-handed shove to Betz's chest.

32. Because Betz's hands were occupied by his canes, he could not break his fall and fell with full force onto his right hip and sustained a fracture.

*FCSB's Investigation, Return-to-Work Plan, and Reinstatement of Hill*

33. FCSB immediately suspended Hill following the assault and collected written statements from Hill, Betz, and other witnesses.

34. In his written statement to FCSB, Hill admitted that he referred to Betz as a "handicapped dude" during the confrontation. FCSB therefore had actual notice on December 20, 2024 that the assault involved an express reference to Betz's disability.

35. On December 23, 2024, Betz filed a criminal complaint alleging that Hill invoked Betz's disability immediately before shoving him. Hill was charged with assault and battery in the Fairfax County General District Court, Case No. GC25007808-00.

36. On January 9, 2025, before students returned from winter break on January 13, 2025, following weather-related school closures, Betz emailed FCPS Employee Relations

Investigator James R. Mackie and Principal Smith, stating that he did not feel safe working in the same building as Hill and expressly connected that concern to his disability, explaining that Hill had inflicted physical harm upon "a disabled person who can't defend himself." Betz informed FCSB that he had no objection to working while Hill was absent but did not feel safe sharing the building with him.

37. While Hill remained suspended, Betz attempted to return to work after winter break on January 13, 2025.

38. During Betz's attempted return, Daryl Byrom, the chair of the School's special-education department, informed Betz of the arrangement FCSB intended to impose if and when Hill returned. Byrom stated that the administrators had directed that Hill remain on one side of the School and Betz remain on the other.

39. Although FCSB modified Betz's schedule and directed that Betz and Hill remain on separate sides of the School, the proposed arrangement would still place them within sight of one another inside the same building. FCSB provided no physical barrier between them, monitoring mechanism, or clear procedure for enforcing the planned separation.

40. Betz objected to the proposed arrangement and asked why Hill would not be transferred, but Byrom responded that Betz could either accept the arrangement or transfer to another school himself.

41. When Betz again asked why Hill would not be transferred, Byrom responded in substance, "That's just the way it is."

42. Betz could not complete the workday because of continuing and worsening pain from the fracture and sought further medical evaluation. Betz has remained under medical care, and his current provider has not cleared him to resume work.

43. Later, Betz met with Principal Smith and the Executive Principal for Region 6, JoVon Rogers, where he raised the inadequacy of the aforementioned arrangement, but these administrators declined to discuss the restrictions or consequences applicable to Hill and stated that they would discuss only Betz's expected conduct and chided him for his purported lack of professionalism.

44. On April 14, 2025, Fairfax County General District Court Judge Raymond J. Obregon heard evidence and reviewed the surveillance footage.

45. Judge Obregon found facts sufficient to find Hill guilty of assault and battery, and found Hill's self-defense contention unpersuasive.

46. Judge Obregon nevertheless deferred adjudication under Virginia Code § 19.2-298.02 per an agreement between Hill and the Commonwealth.

47. In or around May 2025, FCSB ended Hill's paid suspension and returned him to John R. Lewis High School. Betz remained medically unable to work because of the injuries caused by the assault.

48. Betz remains employed by FCSB and intends to return when medically able.

<u>COUNT I: DISABILITY-BASED HOSTILE WORK ENVIRONMENT</u>
*Section 504 of the Rehabilitation Act - Against FCSB Only*

49. Betz incorporates by reference paragraphs 1 through 48.

50. FCSB receives federal financial assistance and is subject to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

51. Betz is a qualified individual with a disability. His permanent physical disability substantially limits his walking and mobility and requires him to use two canes.

52. Hill subjected Betz to unwelcome harassment by expressly invoking and mocking Betz's disability and then physically assaulting him.

53. Hill's harassment was based on Betz's disability; but for Betz's impaired mobility and dependence upon two canes, Hill would not have taunted Betz as "handicapped," exploited Betz's inability to defend himself or break his fall, and shoved him to the ground.

54. The disability-directed physical assault was sufficiently severe to alter the conditions of Betz's employment and create an abusive working environment. The assault fractured Betz's hip and caused continuing physical injury, medical treatment, physical limitations, and lost earnings.

55. FCSB empowered Hill to take tangible employment actions affecting subordinate members of the basketball coaching staff, including Betz. Hill possessed authority to determine Betz's coaching assignment, responsibilities, and compensation.

56. Hill exercised that delegated authority by assigning Betz to the junior-varsity team, reducing Betz's anticipated stipend, removing $1,000 from Betz's compensation, allocating the withheld funds to another coach, and determining whether and when the withheld compensation would be restored.

57. Although Betz ceased actively performing coaching duties before December 20, 2024, the economic consequences of Hill's exercise of supervisory authority remained unresolved. The $1,000 Hill removed from Betz's compensation remained unpaid, and Hill continued to represent that its future payment was subject to his control.

58. During the December 20 confrontation, Hill continued to exercise and assert that authority by defending his decision to remove and reallocate Betz's compensation, invoking his position as head coach, and asserting control over Betz's interactions with basketball players.

59. At the time of the disability-based harassment, Hill therefore continued to possess and exercise FCSB-delegated authority capable of causing Betz direct economic injury. Hill was Betz's supervisor for purposes of imposing liability upon FCSB.

60. Because Hill continued to possess FCSB-delegated authority capable of causing Betz direct economic injury, Hill's intentional disability-based harassment is imputable to FCSB under the federal agency principles governing hostile working environments created by supervisors.

61. That imputation does not depend upon Hill's assault having been authorized by, undertaken for, or intended to advance any legitimate interest of FCSB.

62. Betz did not unreasonably fail to use any available preventive or corrective procedure. Hill's first disability-directed statement immediately preceded the assault, leaving Betz no reasonable opportunity to report or prevent it.

63. Betz thereafter promptly reported the assault, participated in FCSB's investigation, and provided FCSB with his account of Hill's disability-directed conduct. On January 9, 2025, Betz further notified FCSB in writing that Hill had physically harmed him as "a disabled person who can't defend himself" and that Betz did not feel safe sharing a building with Hill.

64. Through its supervisor Hill, FCSB intentionally subjected Betz to a disability-based hostile working environment in violation of Section 504.

65. FCSB is vicariously liable for the direct and proximate consequences of its supervisor's intentional disability-based harassment, including Betz's fractured hip, continuing physical injuries, medical expenses, lost earnings and benefits, and all other compensatory damages available under Section 504.

WHEREFORE, Plaintiff requests judgment against Defendant FCSB for compensatory damages in an amount to be determined at trial; appropriate declaratory and injunctive relief; reasonable attorneys' fees and costs under 29 U.S.C. § 794a; pre- and post-judgment interest; and such other relief as the Court deems just and proper.

## COUNT II: ASSAULT AND BATTERY
*Against Defendant Bryan Hill Only*

66. Betz incorporates by reference paragraphs 1 through 48 and pleads this Count in addition to and, to the extent necessary, in the alternative to Count I, as permitted by Federal Rule of Civil Procedure 8(d).

67. Hill intentionally placed Betz in reasonable apprehension of imminent harmful contact and then made harmful and offensive contact by forcefully shoving Betz to the ground.

68. Hill's contact was neither consented to nor privileged. After hearing the evidence and reviewing the surveillance footage, Judge Obregon found the facts sufficient to establish guilt on the charge of assault and battery and found Hill's contention of self-defense unpersuasive.

69. The assault did not arise from an actual risk of Betz's employment as after the discussion concerning coaching and compensation had concluded, Betz had physically disengaged and begun walking into his classroom, and Hill called Betz back and initiated a new confrontation directed personally at Betz's disability and physical vulnerability.

70. Hill was not implementing an employment decision, performing a teaching or coaching responsibility, or advancing any legitimate interest of FCSB when he invoked Betz's disability and shoved him.

71. The assault was personal in nature and was directed at Betz because of his disability and physical vulnerability, not because of his work as an instructional assistant or coach.

72. As a direct and proximate result of Hill's assault and battery, Betz suffered a fractured hip, continuing physical injury and pain, medical expenses, lost earnings and benefits, loss of enjoyment of life, and other compensable damages.

73. Hill acted intentionally, maliciously, and with conscious disregard for Betz's rights and safety, entitling Betz to an award of punitive damages under Virginia law.

WHEREFORE, Plaintiff requests judgment against Defendant Hill for compensatory damages in an amount to be determined at trial; punitive damages; pre- and post-judgment interest; costs; and such other relief as the Court deems just and proper.

JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully Submitted,

BRANDON BETZ

**/s/ Jeremy C. Huang**
Jeremy C. Huang, VSB 76861
ROWE WEINSTEIN & SOHN, PLLC
7010 Little River Turnpike, Suite 300
Annandale, VA 22003
(T) 301-770-4710 / (F) 301-770-4711
jhuang@roweplle.com
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 12th day of August 2026, I electronically filed the foregoing First Amended Complaint with the Clerk of Court using the Court's CM/ECF system, which will send notice of the filing to all counsel of record.

**/s/ Jeremy C. Huang**
Jeremy C. Huang, VSB 76861