**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | | |
|---|---|---|
| BRANDON BETZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-2314-RDA/LRV |
| | ) | |
| FAIRFAX COUNTY SCHOOL BOARD, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT FAIRFAX COUNTY SCHOOL BOARD'S**
**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
**THE FIRST AMENDED COMPLAINT**

John F. Cafferky, VSB No. 26179
Michael K. Kim, VSB No. 82922
Ian J. McElhaney, VSB No. 94888
BLANKINGSHIP & KEITH, P.C.
4020 University Drive, Suite 300
Fairfax, Virginia 22030
(703) 691-1235 (telephone)
(703) 691-3913 (facsimile)
jcafferky@bklawva.com
mkim@bklawva.com
imcelhaney@bklawva.com
*Counsel for Defendant Fairfax County School Board*

Date: August 26, 2026

# Table of Contents

**Preliminary Statement ........................................................................................................ 1**

**Facts Alleged in the First Amended Complaint ................................................................ 2**

**Argument ............................................................................................................................... 6**

**I. Betz does not state a claim against the School Board for a hostile work environment under Section 504 of the Rehabilitation Act because Hill's conduct is not imputable to it. ........................................................................................................................................6**

**A. Hill was not Betz's supervisor as of December 20, 2024. ....................................... 7**

**B. Betz's claim against the School Board fails under the "co-worker" standard. .. 10**

**C. Betz's claim fails even if Hill was his supervisor because the alleged conduct did not amount to a tangible employment action. ........................................................... 14**

**II. Betz is not entitled to compensatory damages because he alleges no intentional discrimination or deliberate indifference attributable to the School Board. ........................ 17**

**III. Betz states no claim for declaratory or injunctive relief. ................................................ 19**

**Conclusion ........................................................................................................................... 21**

**Preliminary Statement**

Plaintiff Brandon Betz sues his employer, the Fairfax County School Board, solely under Section 504 of the Rehabilitation Act. Like his original pleading, his First Amended Complaint[1] claims that the School Board is liable for a "disability-based hostile work environment" because another School Board employee, Defendant Bryan Hill, verbally and physically harassed him during a confrontation that Betz contends was motivated by disability-based discriminatory animus.[2] In granting the School Board's prior motion to dismiss this claim the Court noted that "[w]here Plaintiff falters, however, is that there must be some basis for imposing liability on the employer." (Dkt. 22 at 6.) Observing that liability for co-worker discrimination arises only where an employer is aware of harassment and fails to take action reasonably calculated to stop it, this Court properly concluded that Betz failed to state a plausible claim because he "concedes that [the School Board] was not on notice at the time of the assault and there has been no secondary harassment (in the context of employment) that [the School Board] has failed to prevent. Plaintiff speculates that, if he returned to work there would be, but such speculation cannot form the basis for a plausible harassment claim." (Dkt. 22 at 6-7.)

Betz now attempts to establish liability based on a completely new theory, claiming that Hill was Betz's "supervisor" (instead of a co-worker) and that the School Board should be vicariously liable for Hill's conduct. But Betz's strategy fails because his allegations demonstrate that Hill was *not* Betz's supervisor at the time of the incident, and even if Hill was, Betz's allegations affirmatively establish that the School Board cannot be held vicariously liable for Hill's conduct as a matter of law because the School Board immediately responded; it suspended

[1] The School Board takes no position with respect to the Court reopening the case pursuant to Betz's Motion to Reopen. (Dkt. 24.)

[2] Count II is asserted solely against Defendant Bryan Hill based on other theories.

Hill, investigated, instituted measures to keep Betz and Hill separated if both returned, and Betz has unreasonably rejected those measures. Additionally, Betz again fails to plausibly allege that the School Board was deliberately indifferent to harassment such that Betz could recover compensatory damages, independently defeating his claim. His passing requests for declaratory and injunctive relief likewise fail as a matter of law. For all these reasons and those discussed below, Betz's claim should be dismissed, and having had the opportunity to amend once already, that dismissal should be with prejudice.

**Facts Alleged in the First Amended Complaint**

Betz and Hill are employees of Fairfax County Public Schools ("FCPS"), a school division supervised and operated by the School Board. (First Amended Complaint, "FAC" ¶¶ 1-3.) Betz suffers from a permanent disability that limits his mobility, and he requires the use of canes to walk. (*Id.* ¶ 8.)

According to Betz, Hill was employed by FCPS at Mt. Vernon High School in the early 2000s, and his employment ended following alleged "misconduct involving inappropriate or harassing communications to coworkers." (*Id.* ¶ 10.) Betz alleges that Hill then worked for other public school systems in the D.C. metro area, but "separated from those systems following additional disciplinary concerns." (*Id.* ¶ 11.)

In Spring 2024, Hill was recruited by the principal of John R. Lewis High School—the school where Betz worked as an instructional assistant and freshman basketball coach—to work there. (*Id.* ¶¶ 7, 12.) FCPS subsequently rehired Hill and assigned him to John R. Lewis HS to work as a teacher and varsity basketball head coach. (*Id.* ¶ 13.)

Betz alleges that as head basketball coach, "Hill managed the School's basketball program and supervised the subordinate coaches serving on his staff." (*Id.* ¶ 14.) He claims "[u]pon information and belief" that FCPS allocated funds to Hill for compensation of

subordinate coaches, and delegated to Hill the authority to select, remove, and assign subordinate coaches, determine their coaching duties and schedules, and determine which subordinate coaches would receive stipends and the amounts received. (*Id.* ¶¶ 15-16.) Betz understood Hill's decisions to "be final in practice" and "[u]pon information and belief, FCSB implemented Hill's decisions . . . ." (*Id.* ¶ 17.)

In Summer 2024, Hill promised Betz a paid position as an assistant varsity coach with a stipend of approximately $3,000. (*Id.* ¶ 18.) After the school year began, Hill instead assigned Betz to coach the junior-varsity team with a lower stipend of approximately $2,000. (*Id.*) Around November 2024, Betz alleges that "Hill exercised the authority FCSB had delegated to him over the compensation of subordinate coaches by removing $1,000 from Betz's stipend and allocating those funds to another coach to cover study hall." (*Id.* ¶ 19.) Betz questioned Hill about the "withheld compensation" and Hill advised Betz that he would "restore the $1,000 using funds generated by a basketball camp the following summer." (*Id.* ¶ 20.)

Betz then "ceased actively performing coaching duties . . . ." (*Id.* ¶ 21.) According to Betz, however, "[h]is compensation for services already performed . . . remained unresolved. As of December 20, 2024, the withheld $1,000 remained unpaid, and Hill continued to represent that its future payment was within his control." (*Id.*) Betz further alleges that Hill told students that Betz stopped coaching "because he was greedy and upset about his compensation." (*Id.* ¶ 22.)

On December 20, 2024, Betz asked Hill during a class change at school "to correct the statements Hill had made to students and to explain that Betz had stepped away from coaching because of family obligations." (*Id.* ¶ 23.) Betz alleges that during this exchange, "Hill defended his exercise of authority over Betz's compensation. Hill stated that he had taken $1,000 from Betz's compensation because Betz had not covered study hall and had allocated the money to another coach." (*Id.* ¶ 24.) Hill also allegedly "invoked his position as head coach, asserted that

he could 'do whatever he wants to do,' challenged Betz's authority to interact with basketball players, and ordered Betz to return to his classroom." (*Id.* ¶ 25.) Betz then turned from Hill and began walking to his adjoining classroom, the discussion having concluded. (*Id.* ¶ 26.)

As Betz entered his classroom, "Hill called him back and initiated a new and separate confrontation." (*Id.* ¶ 27.) Hill called Betz a "bitch ass n[*]gga" (alterations by School Board counsel) and stated in substance "[w]hat are you going to do about it? You're handicapped." (*Id.* ¶¶ 28-29.) Betz turned and verbally objected; Hill then shoved Betz's chest, causing Betz to fall on his hip and sustain a fracture. (*Id.* ¶¶ 30-32.)

The School Board immediately suspended Hill and collected statements from Hill, Betz, and additional witnesses. (*Id.* ¶ 33.) Hill's written statement included that he referred to Betz as a "handicapped dude" during the incident. (*Id.* ¶ 34.) Betz filed a criminal complaint alleging that Hill invoked his disability before shoving him. (*Id.* ¶ 35.) Hill was charged with assault and battery in the Fairfax County General District Court, Case No. GC25007808-00. (*Id.*)

On January 9, 2025, Betz emailed FCPS Employee Relations and the school principal, explaining that he did not feel safe working with Hill as he had "inflicted physical harm upon 'a disabled person who can't defend himself.'" (*Id.* ¶ 36.) Betz explained that "he had no objection to working while Hill was absent but did not feel safe sharing the building with him." (*Id.*)

Betz attempted to return to work after January 13, 2025—Hill remained on suspension at this time. (*Id.* ¶ 37.) During Betz's return, the school's special education department chair advised Betz that if/when Hill returned, "administrators had directed that Hill remain on one side of the School and Betz remain on the other." (*Id.* ¶ 38.) The School Board also modified Betz's schedule, in addition to directing that Betz and Hill remain on separate sides of the school. (*Id.* ¶ 39.) In Betz's estimation, however, the proposed arrangement would still place Betz and Hill "within sight of one another inside the same building" and did not provide a "physical barrier

between them, monitoring mechanism, or clear procedure for enforcing the planned separation." (*Id.* ¶ 39.) Betz objected to the proposed arrangement and questioned why Hill would not be transferred; the special education department chair advised Betz that he could "either accept the arrangement or transfer to another school himself." (*Id.* ¶ 40.) Betz ultimately was unable to complete the workday due to pain from his fracture and sought further medical evaluation. (*Id.* ¶ 42.) He has remained under medical care, and his medical provider has not cleared him to return to work. (*Id.*)

Betz later met with the school principal and the Executive Principal for Region 6, and alleged that the proposed arrangement between himself and Hill was inadequate. (*Id.* ¶ 43.) The administrators allegedly "declined to discuss the restrictions or consequences applicable to Hill and stated that they would discuss only Betz's expected conduct and chided him for his purported lack of professionalism." (*Id.*)

Hill's criminal trial proceeded on April 14, 2025. The court found facts sufficient to find Hill guilty of assault and battery while rejecting Hill's self-defense claim. (*Id.* ¶¶ 44-45.) Instead of finding Hill guilty, the court deferred adjudication for twelve months pursuant to Code of Virgina section 19.2-298.02. (*Id.* ¶ 46; Exhibit A.)[3] The court conditioned the deferral on Hill's "general good behavior, payment of court costs and the following special terms and conditions" which included that Hill "shall have no assaultive contact with the victim Brandon Betz." (Exhibit A.) The conditions also required Hill to be on general good behavior for the deferral period, complete forty hours of community service and an anger management course, and

[3] As the Fairfax County General District Court proceedings are a matter of public record, this Court may take judicial notice of the deferred disposition orders in Case No. GC25007808-00 without converting the School Board's Motion to Dismiss into a motion for summary judgment. *See Halscott Megaro, P.A. v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) ("[A] court may properly take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.").

imposed a period of active probation. (*Id.*) The charge would be dismissed if Hill was compliant with the conditions; if not, the court ordered that he would be guilty of assault and battery under Code of Virginia section 18.2-57 and would be sentenced by the court's discretion. (*Id.*) The matter was continued to April 9, 2026. (*Id.*) The charge was dismissed with prejudice on April 9, 2026, after Hill completed the deferral period. (Exhibit B.)

Hill returned to work at John R. Lewis HS in May 2025 after his suspension was lifted. (FAC ¶ 47.) Betz has remained medically unable to work but is still employed by the School Board and intends to return to work once medically able. (*Id.* ¶¶ 47-48.)

## Argument

### I. Betz does not state a claim against the School Board for a hostile work environment under Section 504 of the Rehabilitation Act because Hill's conduct is not imputable to it.

"To prevail on a hostile work environment claim under the Rehabilitation Act, [Betz] must prove that [he]: (1) is a qualified individual with a disability; (2) was subject to unwelcome harassment; (3) the harassment was based on [his] disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis for imputing liability to the employer." *Edmonson v. Potter*, 118 Fed. App'x 726, 730 (4th Cir. 2004). *See also Bell v. Shulkin*, 709 Fed. App'x 167, 169 (4th Cir. 2017) ("To establish a hostile work environment claim [under Rehabilitation Act], a plaintiff must demonstrate that the conduct about which she complains: '(1) was unwelcome; (2) resulted because of her . . . disability . . . ; (3) was sufficiently severe or pervasive to alter the conditions of her employment; and (4) was imputable to her employer.'" (quoting *Pueschel v. Peters*, 577 F.3d 558, 564-65 (4th Cir. 2009)).

Assuming *arguendo* that Betz is a qualified individual with a disability and was subject to severe and pervasive harassment based on his disability,[4] his claim fails once again for failure to plausibly allege a factual basis to impute liability to the School Board.

**A. <u>Hill was not Betz's supervisor as of December 20, 2024</u>.**

As the Supreme Court has explained in the Title VII context, an employer's liability for workplace harassment "may depend on the status of the harasser. If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions. In cases in which the harasser is a 'supervisor,' however, different rules apply." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013).[5] An "employer may be either strictly or vicariously liable for the supervisor's actions." *Strothers v. City of Laurel*, 895 F.3d 317, 333 (4th Cir. 2018).[6]

---

[4] As the School Board argued in its initial Motion to Dismiss briefing, causation under Section 504 of the Rehabilitation Act should be assessed under the standard of whether the discrimination was *solely* by reason of the plaintiff's disability, as opposed to a "but for" causation standard. (Dkt. 13 at 5-9, Dkt. 21 at 2-6.) This Court applied a "but-for" standard in its analysis of Betz's original complaint. (Dkt. 22 at 5.) The School Board respectfully submits that application of the "but-for" standard is incorrect for the reasons identified in its original Motion to Dismiss briefing, incorporated herein by reference, and that Betz's Amended Complaint is subject to dismissal because he does not allege facts establishing that Hill's conduct was motivated solely by reason of Betz's disability. Yet, even applying "but-for" causation and assuming *arguendo* that Betz alleged plausible facts to meet it, Betz's amended claim fails for the same reason as his first; i.e., failure to plausibly allege facts to impute liability to his employer.

[5] "Title VII precedent guides the interpretation of the ADA (and thus the Rehabilitation Act)." *Richardson v. Md. Transit Admin.*, 2019 U.S. Dist. LEXIS 32754, at *26 (D. Md. Mar. 1, 2019) (citing *Fox v. GMC*, 247 F.3d 169, 176 (4th Cir. 2001)).

[6] Whether strict or vicarious liability applies for a supervisor's conduct depends on the nature of the supervisor's actions. "If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable." *Vance*, 570 U.S. at 424. But where, as here, no "tangible employment action" is alleged, "the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." *Id.*

Determining whether an individual is a co-worker or a supervisor depends on the meaning of the term "supervisor." In *Vance*, the Supreme Court resolved a circuit split over that very question, holding that "an employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim, *i.e.*, to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Vance*, 570 U.S. at 431 (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Betz contends that Hill was his supervisor because when Betz was serving as the junior varsity coach, Hill had authority to determine Betz's coaching assignment, responsibilities, and stipend as a subordinate coach. (FAC ¶¶ 55-56.) But Betz pleads no facts establishing that Hill was his supervisor on the day of the incident. Assuming *arguendo* that Hill qualified as Betz's supervisor at some earlier point in time, Betz's claim nevertheless fails because Hill was not Betz's supervisor as of December 20, 2024, as Betz affirmatively pleads that *Betz had ceased coaching prior to the incident.* (FAC ¶¶ 21-22.) Vicarious liability may be available "[i]f the harasser ***is*** a supervisor," *Strothers*, 895 F.3d at 333 (emphasis added), but Hill was not Betz's supervisor at the time of the alleged harassment.

Perhaps cognizant of this problem, Betz asserts that Hill "continued to exercise and assert [his] authority by defending his decision to remove and reallocate Betz's compensation, invoking his position as head coach, and asserting control over Betz's interactions with basketball players" such that, in Betz's estimation, "Hill therefore continued to possess and exercise FCSB-delegated authority capable of causing Betz direct economic injury." (FAC ¶¶ 58-59.) These allegations do not establish an ongoing supervisory relationship between the two employees.

Insofar as Betz's argument rests on Hill's defense of an earlier financial decision, it fails because a supervisor is one empowered to "*take* tangible employment actions against the victim" and "*inflict* direct economic injury." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 278 (4th Cir. 2015) (citations and quotation marks omitted, emphasis added), *abrogated on other grounds, see Strothers*, 895 F.3d at 327 n.3. That an individual harasser previously exercised the authority to do so is irrelevant to the question of whether that individual presently has that authority and occupies the role of supervisor at the time of harassment such that liability may be imposed on the employer. Were it otherwise, a former supervisor would be rendered a current supervisor *ad infinitum* simply because they previously exercised authority in a supervisory capacity, regardless of their present status relative to an employee they once supervised. That is not the law. *See Vance*, 570 U.S. at 439 ("[M]ost workplace tortfeasors are aided in accomplishing their tortious objective by the existence of the agency relation, and consequently *something more* is required in order to warrant vicarious liability. The ability to direct another employee's tasks is simply not sufficient." (internal citation and quotation marks omitted, emphasis added). Thus, Betz's contention that Hill could, after Betz was no longer serving as a coach, talk to Betz about matters relating to that time did not make Hill Betz's current supervisor.

Betz's other allegations—concerning Hill referencing his role as head coach and asserting control regarding interactions with students—run afoul of the Supreme Court's rejection of "nebulous" or "colloquial uses of the term 'supervisor'" for purposes of employer liability. *Vance*, 570 U.S. at 431-32. The "ability to direct a co-worker's labor to some ill-defined degree" is not sufficient to render an individual a supervisor. *Id.* at 432. Betz's attempt to characterize Hill as his 'supervisor' based on such allegations thus fails as a matter of law.

**B. Betz's claim against the School Board fails under the "co-worker" standard.**

Because Hill was not Betz's supervisor at the time of the alleged harassment, the applicable test for determining whether liability is imputable to the employer is that governing claims premised upon co-worker harassment. "An employer is not liable for a hostile work environment created by a plaintiff's coworker unless the employer 'knew, or should have known, about the harassment and failed to take action reasonably calculated to stop it.'" *Reeves v. Dimensions Health Corp.*, 2024 U.S. Dist. LEXIS 114063, at *13 (D. Md. June 28, 2024) (quoting *Bazemore v. Best Buy*, 957 F.3d 195, 201 (4th Cir. 2020)) (considering hostile work environment ADA claim).[7] Betz's own allegations demonstrate that liability cannot be imputed to the School Board under this standard.

The Fourth Circuit does not require an employer to specifically or exclusively terminate or remove an employee in response to harassment. *See Bazemore*, 957 F.3d at 201 (noting that Title VII did not "prescribe specific action for an employer to take in response to racial or sexual harassment, or require that the harasser be fired"). To the contrary, an employer's response need only reasonably calculated to end the harassment, and where, as here, "[a] remedial action . . . effectively stops the harassment" that action "will be deemed adequate as a matter of law." *EEOC v. Xerxes Corp.*, 639 F.3d 658, 670 (4th Cir. 2011) (citation omitted). For example, in *Spicer v. Virginia*, 66 F.3d 705 (4th Cir. 1995) (en banc), the Fourth Circuit vacated the judgment of a district court when the district court found an employer's response to harassment insufficient notwithstanding that the employer responded and there was no further offensive conduct. *Id.* at 710-11. It emphasized that "[w]hen presented with the existence of illegal

[7] Indeed, Betz agreed that this co-worker standard (as opposed to the standard for supervisors) was the appropriate one in earlier briefing before the Court, arguing that "[t]he employer liability question is whether the employer 'knew, or should have known, about the harassment and failed to take action reasonably calculated to stop it.'" (Dkt. 18 at 7) (quoting *Bazemore*, 957 F.3d at 201).

conduct, employers can be required to respond promptly and effectively, but when an employer's remedial response results in the cessation of the complained of conduct, *liability must cease as well. Employers cannot be saddled with the insurmountable task of conforming all employee conduct at all times to the dictates of Title VII, irrespective of their knowledge of such conduct or the remedial measures taken in response to such conduct.*" *Id.* at 711 (emphasis added).

This Court already determined that Betz failed to plausibly allege facts in his original complaint to impute liability on the basis of co-worker harassment, holding that,

> Where Plaintiff falters, however, is that there must be some basis for imposing liability on the employer. The Fourth Circuit has held that a claim asserting discrimination between two co-workers will be imputable to an employer only if the plaintiff sufficiently alleges facts that the employer knew of the harassment and failed to stop it. However, Title VII does not prescribe specific action for an employer to take in response to . . . harassment, or require that the harasser be fired. Rather, employers are required to take action reasonably calculated to stop the harassment.
>
> As Plaintiff here concedes, Plaintiff does not contend that Defendant School Board should have predicted the December 20 assault based on Defendant Hill's employment history. Thus, any prior incidents (which were unrelated to disability discrimination) did not serve to put Defendant FCSB on notice for purposes of a Section 504 harassment claim. Plaintiff attempts to reframe the question as to whether Defendant's response to the conduct was adequate. But that is not for the Court to decide on these facts. For a harassment claim - which the only claim that Plaintiff has asserted - there must have been some harassment that the employer should have and failed to reasonably prevent. Here, Plaintiff concedes that Defendant was not on notice at the time of the assault and there has been no secondary harassment (in the context of employment) that Defendant has failed to prevent. Plaintiff speculates that, if he returned to work there would be, but such speculation cannot form the basis for a plausible harassment claim.

(Dkt. 22 at 6-7 (internal citations and quotation marks omitted)). Betz's amended complaint fares no better.

Betz again alleges no facts suggesting that the School Board knew or should have known that Hill was subjecting Betz to any disability-based harassment prior to learning of the December 20, 2024 incident. After the incident, the School Board "immediately suspended Hill"

and undertook an investigation. (FAC ¶¶ 33-34.) During Betz's attempt to return to work (while Hill remained suspended), Betz was further advised that his schedule would be modified and that if Hill returned, administrators had "directed that Hill remain on one side of the School and Betz remain on the other." (FAC ¶¶ 38-39.) In other words, the School Board immediately took action that was reasonably calculated to stop the harassment.

Hill was then tried in the Fairfax General District Court in April 2025 and a deferred disposition was imposed by that court, whereupon he was required to, *inter alia*, be of good behavior, complete an anger management course, and "have no assaultive contact with the victim Brandon Betz", with the threat of a criminal sentence looming if he failed to comply, and dismissal of the charge if he did comply. (Ex. A.) The School Board permitted Hill to return in May 2025, and Betz has remained on leave. (FAC ¶¶ 47-48.) Under those circumstances—where Hill faced criminal penalties were he to engage in any assaultive conduct against Betz—the School Board's decision to allow him to return to work while Betz was on leave was a reasonable one, borne out by the lack of any allegation of subsequent disability-based harassment and Hill's completion of his deferred disposition. (Ex. B.)

Betz's claim is similar to the one rejected in *Bazemore v. Best Buy*, 957 F.3d 195 (4th Cir. 2020). There, an employee sued Best Buy under Title VII after a co-worker made an inappropriate racial and sexual statement, and "perceived no sign at work that anything had changed or that management had given the incident 'any real attention'" notwithstanding human resources reports that it was handling and had subsequently resolved the matter (by issuing a final written warning to the offending employee). *Id.* at 198-99. The district court granted Best Buy's motion to dismiss, holding that the allegations "were not imputable to Best Buy because she did not allege facts suggesting that Best Buy knew about the harassment and failed to stop it. Rather, it found that the allegations in the complaint indicated that 'Best Buy responded

promptly to Bazemore's complaint and [the offending employee's] harassment ceased.'" *Id.* at 199-200.

Affirming the dismissal, the Fourth Circuit observed that "Bazemore asserts that [a human resources representative] contacted her three days after she reported what [the offending coworker] said and within two weeks [the coworker] received a written warning. Importantly, she does not assert that [the coworker], or anyone else at Best Buy, harassed her again. The district court correctly held that, given those assertions, Bazemore has not pled that Best Buy failed to act to stop [the coworker's] harassment." *Id.* at 201. The court further emphasized that Title VII did not "prescribe specific action for an employer to take in response to racial or sexual harassment, or require that the harasser be fired, as Bazemore suggests should have happened to [the coworker]." *Id.* It concluded, "Bazemore's complaint makes clear that in response to her complaints, Best Buy took steps that were not only reasonably calculated to end [the coworker's] behavior, but that did, in fact, end it. In light of those allegations, whether or not Best Buy could have done more is irrelevant. Thus, even construing Bazemore's pro se allegations liberally, we agree with the district court that [the coworker's] conduct is not imputable to Best Buy." *Id.* at 202.

The allegations here again warrant the same outcome. Betz alleges that the School Board immediately suspended Hill following the incident and investigated, implemented measures to keep Betz and Hill separated if both returned, and ultimately allowed Hill to return only after criminal proceedings resulted in a deferred disposition with the threat of criminal penalties in the event of similar misconduct. And no further disability-based harassment is alleged, meaning the School Board's response was reasonably calculated to stop the harassment as a matter of law. *See, e.g.*, *EEOC v. Xerxes Corp.*, 639 F.3d 658, 670 (4th Cir. 2011) ("A remedial action that effectively stops the harassment will be deemed adequate as a matter of law. On the other hand,

it is possible that an action that proves to be ineffective in stopping the harassment may nevertheless be found reasonably calculated to prevent future harassment and therefore adequate . . . as a matter of law." (quoting *Knabe v. Boury Corp.*, 114 F.3d 407, 411-12 n.8 (3d Cir. 1997)). Betz's speculation that these measures may not prevent harassment at some point in the future is—as this Court already held—insufficient to state a claim upon which relief may be granted. (Dkt. 22 at 7 "Plaintiff speculates that, if he returned to work there would be [harassment], but such speculation cannot form the basis for a plausible harassment claim."). His claim should be dismissed on that basis.

**C. Betz's claim fails even if Hill was his supervisor because the alleged conduct did not amount to a tangible employment action.**

Even assuming *arguendo* that Betz had plausibly alleged that Hill was his supervisor at the time of the harassment (and he has not), dismissal is still in order. Betz does not assert facts that plausibly establish that Hill's alleged discriminatory criminal assault constituted or culminated in a tangible employment action, and "[w]hen no tangible employment action is taken, an employer may avoid liability by raising the *Faragher/Ellerth* affirmative defense. This defense requires '(a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" *McKinney v. G4s Gov't Sols., Inc.*, 711 Fed. App'x 130, 135 (4th Cir. 2017) (citations omitted).[8]

[8] While an affirmative defense generally cannot be reached on a motion to dismiss, it can where, as here, "facts sufficient to rule on an affirmative defense are alleged in the complaint . . . ." *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). *See, e.g.*, *Butler v. Md. Aviation Admin*, 2012 U.S. Dist. LEXIS 114378, at *14-25 (D. Md. Aug. 14, 2012) (granting motion to dismiss where "even on [plaintiff's] factual allegations, the MAA would be entitled to the '*Faragher/Ellerth*' affirmative defense").

Betz does not allege that the School Board should have anticipated that Hill would engage in disability-based harassment through a criminal assault or otherwise unreasonably failed to prevent it. *Cf. Lissau v. Southern Food Ser.*, 159 F.3d 177, 182-83 (4th Cir. 1998) ("Under the defense, evidence that Southern had disseminated an effective anti-harassment policy provides compelling proof of its efforts to prevent workplace harassment. And any evidence that Lissau failed to utilize Southern's complaint procedure will normally suffice to satisfy [its] burden under the second element of the defense. If, however, the district court finds no effective anti-harassment policy was in place or that Lissau did avail herself of the policy, then summary judgment would be inappropriate." (internal citations and quotation marks omitted)). To the contrary, this Court recognized that he has already conceded that "Plaintiff does not contend that Defendant School Board should have predicted the December 20 assault based on Defendant Hill's employment history." (Dkt. 22 at 6.)[9] He likewise alleges that there was simply no time to utilize "any available preventive or corrective procedure." (FAC ¶ 62.) And as discussed above, the School Board took immediate action upon being notified of the incident by suspending Hill, investigating, and instituting measures to separate Betz and Hill if both returned. (FAC ¶¶ 33-34, 38-39.) Betz furthermore alleges no subsequent harassment, so "the first element of the *Faragher/Ellerth* affirmative defense is undisputable" on the face of Betz's complaint. *Butler*, 2012 U.S. Dist. LEXIS 114378, at *18.

---

[9] This concession is consistent with the Supreme Court of Virginia's observation that "[a]s a general rule, there is no duty to warn or protect against acts of criminal assault by third parties. This is so because under 'ordinary circumstances, acts of assaultive criminal behavior by third persons cannot reasonably be foreseen.'" *Terry v. Irish Fleet, Inc.*, 296 Va. 129, 135 (2018) (quoting *A.H. v. Rockingham Publ'g Co.*, 255 Va. 216, 222 (1998)).

Although the circumstances alleged in this case raise the question of whether consideration of the second element is even required,[10] Betz's allegations in any event establish that he "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *McKinney*, 711 Fed. App'x at 135. When advised that his schedule had been modified and that administrators had directed Hill and Betz to remain on opposite sides of the school in the event both returned, Betz did not accept those measures (nor the opportunity to transfer to another school), instead objecting to multiple individuals and ultimately filing a lawsuit against the School Board. (FAC ¶¶ 38-41, 43.)

But Betz's belief that a response is inadequate simply is not a basis to impose liability upon the School Board. *See Bazemore*, 957 F.3d at 202 ("Plaintiffs often feel that their employer 'could have done more to remedy the adverse effects of the employee's conduct. But Title VII requires only that the employer take steps reasonably likely to stop the harassment." (quoting *Xerxes Corp.*, 639 F.3d at 674). His rejection of the School Board's tangible remedial measures, particularly in the absence of any prior or further alleged disability harassment, establishes the second prong of the affirmative defense to the extent necessary. *See, e.g.*, *Butler*, 2012 U.S. Dist.

---

[10] As the Fourth Circuit has explained in an unpublished decision, "we cannot conceive that an employer that satisfies the first element of the affirmative defense and that promptly and adequately responds to a reported incident of sexual harassment . . . would be liable for the harassment on the basis of an inability to satisfy the literal terms of the second element of the affirmative defense." *Watkins v. Professional Sec. Bureau, Ltd.*, 1999 U.S. App. LEXIS 29841, at *21 n.16 (4th Cir. Nov. 15, 1999). The second element of the affirmative defense arose in the context of "employees who delayed in bringing charges against their employers . . . . In that context, the second element of the affirmative defense makes sense." *Jaudon v. Elder Health, Inc.*, 125 F.Supp.2d 153, 164 n.6 (D. Md. 2000). In the circumstances of this case, where the alleged harassment is reported and the employer takes prompt remedial action, the second element is arguably unnecessary. *See id.* at 164 ("The court agrees that the second element does not have any practical application where, as here, the employee promptly brought charges against the harasser, the employer took prompt remedial action, and the sexual harassment stopped. Therefore, the court concludes that Elder Health is not required to establish the second element of the affirmative defense in order to validly invoke the defense."). The School Board nevertheless submits that the second element is affirmatively established on the facts alleged in the Amended Complaint.

LEXIS 114378, at *22-23 ("Because Butler's complaint itself reflects that Butler unreasonably failed to take advantage of the MAA's complaint and investigation opportunities, her complaint satisfies the second prong of the *Faragher/Ellerth* affirmative defense."). So whether Hill is a co-worker or a supervisor, the outcome is the same, and Betz's First Amended Complaint should be dismissed with prejudice.

## II. Betz is not entitled to compensatory damages because he alleges no intentional discrimination or deliberate indifference attributable to the School Board.

Insofar as Betz seeks compensatory damages, his claim fails for an additional reason; failure to allege that the School Board subjected him to intentional discrimination. *See S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 262 (3d Cir. 2013) ("All courts of appeals that have considered this issue have held that compensatory damages are not available under § 504 of the RA and § 202 of the ADA absent intentional discrimination." (citing, *inter alia*, *Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 830 n.9 (4th Cir. 1994)). While some courts have accepted a "deliberate indifference" standard as sufficient to establish intentional discrimination under the Rehabilitation Act,[11] Betz fails to allege facts demonstrating deliberate indifference that would entitle him to compensatory damages. To the contrary, his alleged facts defeat any claim of deliberate indifference and thus any claim to compensatory damages.

---

[11] The Fourth Circuit observed that "courts largely agree that compensatory damages are only available to ADA plaintiffs who prove intentional discrimination, but there is a disagreement about what standard to use: deliberate indifference or something more. While most courts favor the deliberate-indifference standard, our court has not yet determined the appropriate standard." *Koon v. North Carolina*, 50 F.4th 398, 404 (4th Cir. 2022) (internal citations omitted). In considering claims under both the ADA and Rehabilitation Act, the court concluded that "we can avoid these difficult issues by assuming for argument's sake . . . that the friendlier standard of deliberate indifference applies" and held that the plaintiff's claim failed even under that standard. *Id. See also id.* at 403 n.2 ("The Fourth Circuit treats claims under the Rehabilitation Act and the ADA as the same. They can be combined for analytical purposes because the analysis is substantially the same. This opinion therefore focuses mainly on the ADA claim, but the analysis extends to both." (internal citation and quotation marks omitted)).

As the Fourth Circuit has explained, "[t]he deliberate-indifference standard is a common one in the law, though not one we have often applied to disability discrimination. In essence, the deliberate-indifference standard starts with determining whether there was—objectively speaking—an ongoing or likely violation of some federal right, and then moves on to determining whether a defendant had the appropriate mental state—subjectively speaking—toward that federal-rights violation." *Koon*, 50 F.4th at 404. To establish deliberate indifference, the Fourth Circuit requires "a plaintiff . . . begin by showing an ongoing or likely violation of a federally protected right before moving on to prove deliberate indifference through knowledge of that right and a failure to respond appropriately." *Id.* at 405.

Betz alleges no deliberate indifference. "Deliberate indifference is, at bottom, an actual-notice standard. Simple failure to comply with the law is not deliberate indifference. It is not enough simply to point to what could or should have been done. That is the language of negligence. Deliberate indifference requires a deliberate or conscious choice to ignore something." *Id.* at 406 (internal citations and quotation marks omitted). This is a "high bar" and "good-faith efforts to remedy the plaintiff's problems will prevent finding deliberate indifference, absent extraordinary circumstances." *Id.* at 407. As discussed above, here the only incident of disability-related conduct Betz alleges is the alleged criminal assault on December 20, 2024, and Betz does contend that the School Board should have predicted it. After that event, the School Board was anything but deliberately indifferent; it suspended Hill immediately, investigated, and instituted measures to keep Betz and Hill separated if both returned to work. That Betz believes the School Board should have taken other action is, at best, an allegation of negligence (and one undercut by the absence of any allegation that Hill discriminated against Betz based on his disability after December 20, 2024). *See Koon*, 50 F.4th at 409 ("But all those 'shoulds' are the language of negligence, arguments about what a reasonably prudent person

would have done. Saying that she should have done a better examination is to make a kind of medical malpractice claim, and we know that cannot be the basis of deliberate indifference.”). *See also Moreno v. Bosholm*, 151 F.4th 543, 574 (4th Cir. 2025) (“Moreno says that response was inadequate, but ‘the mere negligent or inadvertent failure to provide adequate care is not enough’ to establish deliberate indifference.’” (citations omitted)). But the law is clear that allegations of negligence cannot establish deliberate indifference.

At bottom, Betz alleges no facts to establish a viable claim for compensatory damages against the School Board. His allegations establish the very opposite of deliberate indifference, and his claims should be dismissed.

## III. <u>Betz states no claim for declaratory or injunctive relief</u>.

Finally, Betz seeks “appropriate declaratory and injunctive relief” in the First Amended Complaint. Insofar as he does so in an attempt to avoid the need to plausibly allege intentional discrimination or deliberate indifference, his claim fails for all of the reasons discussed above in Section I. In addition to those reasons, these passing requests for relief independently fail because Betz has not alleged facts establishing that he would be entitled to declaratory or injunctive relief.

Declaratory judgment is inappropriate where, as here, the events upon which Betz premises his claim have already occurred. Indeed, “where ‘claims and rights have fully matured, and the alleged wrongs have already been suffered,’ declaratory judgment is an inappropriate remedy.” *Haigler v. Royal Farms*, 2022 U.S. Dist. LEXIS 128321, at *7 (E.D. Va. July 19, 2022) (citation omitted). Betz makes clear that he believes any alleged violation of the Rehabilitation Act *has already happened* (FAC ¶ 64), rendering declaratory judgment inappropriate. *See, e.g.*, *AvePoint, Inc. v. Knickerbocker*, 475 F.Supp.3d 483, 488 (E.D. Va. 2020) (“[W]hen a breach of contract has already occurred and damages have already accrued,

'there is no guidance' that can be offered via a declaratory judgment to steer 'conduct away from a breach of contract.'" (citation omitted)); *Tapia v. U.S. Bank, N.A.*, 718 F.Supp.2d 689, 695 (E.D. Va. 2010) ("'[D]eclaratory judgments are designed to declare rights so that parties can conform their conduct to avoid future litigation,' and are untimely if the questionable conduct has already occurred or damages have already accrued." (citation omitted)).

Similarly, Betz fails to plead facts supporting injunctive relief. Irreparable injury is an elemental prerequisite to injunctive relief. *eBay v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006), *superseded by statute on other grounds*, *see InSinKerator, LLC v. Joneca Co., LLC*, 163 F.4th 608, 622 (9th Cir. 2025). "Injunctive relief . . . 'is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again.'" *Thomas v. Salvation Army S. Terr.*, 841 F.3d 632, 638 (4th Cir. 2016) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

The First Amended Complaint simply claims the School Board violated Section 504, but identifies no specific ongoing or imminent injury and fails to plausibly allege violation of the statute. "Irreparable harm requires a plaintiff to make a 'clear showing that it will suffer harm that is neither remote nor speculative, but actual and imminent.'" *Salomon & Ludwin, LLC v. Winters*, 150 F.4th 268, 278 n.7 (4th Cir. 2025) (quoting *Mountain Valley Pipeline, LLC v. 6.56 Acres*, 915 F.3d 197, 216 (4th Cir. 2019)). Betz alleges no such irreparable harm here. And akin to the deficiency identified with Betz's request for declaratory relief, injunctive relief is not a remedy for past conduct—"an injunction may not be used for 'punishment or reparations for . . . past violations.'" *A Helping Hand, LLC v. Balt. Cty.*, 355 Fed. App'x 773, 776 (4th Cir. 2009) (quoting *Belk v. Charlotte-Mecklenburg Bd. of Ed.*, 269 F.3d 305, 347 (4th Cir. 2001) (en banc)). Accordingly, "[b]efore a court grants a permanent injunction, the court must first find necessity--

a danger of future violations." *Belk*, 269 F.3d at 347. No basis for such a finding has been alleged, and Betz's speculation about what Hill might do in the future "cannot form the basis for a plausible harassment claim." (Dkt. 22 at 7.) His request for injunctive relief is infirm as a matter of law.

## **Conclusion**

In his First Amended Complaint, Betz again fails to state a claim against the School Board for violation of Section 504. For the foregoing reasons, the School Board's Motion to Dismiss should be granted and Betz's First Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

FAIRFAX COUNTY SCHOOL BOARD

By Counsel

Date: August 26, 2026

BLANKINGSHIP & KEITH, P. C.
4020 University Drive, Suite 300
Fairfax, Virginia 22030
(703) 691-1235 (telephone)
(703) 691-3913 (facsimile)

By: /s/ Ian J. McElhaney
John F. Cafferky, VSB No. 26179
jcafferky@bklawva.com
Michael K. Kim, VSB No. 82922
mkim@bklawva.com
Ian J. McElhaney, VSB No. 94888
imcelhaney@bklawva.com
*Counsel for Fairfax County School Board*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of August 2026, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Jeremy C. Huang, Esq.
Rowe Weinstein & Sohn, PLLC
7010 Little River Turnpike, Suite 300
Annandale, VA 22003
jhuang@roweplc.com
*Counsel for Plaintiff*

Michael L. Daniels, Esq.
Michael L. Daniels, PLC
1775 Tysons Boulevard, 5th Floor
Tysons, VA 22102
mdaniels@mldplc.com
*Counsel for Defendant Bryan Hill*

/s/ Ian J. McElhaney

Ian J. McElhaney, VSB No. 94888
BLANKINGSHIP & KEITH, P.C.
4020 University Drive, Suite 300
Fairfax, Virginia 22030
Phone: 703-691-1235
Fax: 703-691-3913
imcelhaney@bklawva.com
*Counsel for Fairfax County School Board*